# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

DESMOND QUICK,

Plaintiff,

v.                                                    9:12-CV-1717 (DNH/ATB)

HAROLD GRAHAM,

Defendant.

DESMOND QUICK, Plaintiff, *pro se*
DOUGLAS J. GOGLIA, Ass't Att'y Gen., for the Defendant

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## REPORT-RECOMMENDATION AND ORDER

Presently before the court are the plaintiff's motion for summary judgment pursuant to Fed. R. Civ. P. 56, filed on February 18, 2014 (Dkt. No. 63), and his motion to file a proposed third amended complaint, filed on April 9, 2014 (Dkt. No. 71).[1] Defendant Graham filed his opposition to plaintiff's motions and a cross-motion for summary judgment on April 18, 2014. (Dkt. No. 72). Plaintiff filed a response on June 30, 2014 (Dkt. No. 83), and defendant filed a reply on July 7, 2014 (Dkt. No. 84). The summary judgment motions were referred to me for Report and Recommendation on February 18 and April 18, 2014 by U.S. District Judge David N. Hurd, pursuant to 28 U.S.C. § 636 (b) and Local Rules N.D.N.Y. 72.3(c).

The sole remaining civil rights claim in the Second Amended Complaint relates to plaintiff's confinement, at various times in March and April 2012, by the New York

---

[1] Plaintiff filed his second amended complaint, with defendant's consent, on February 21, 2014. (Dkt. Nos. 66, 67). Plaintiff also filed a declaration from another inmate, in support of his summary judgment motion, on February 27, 2014. (Dkt. No. 68).

Department of Corrections and Community Supervision ("DOCCS") in an observation cell of the Residential Crisis Treatment Program ("RCTP") at the Auburn Correctional Facility ("Auburn"). For three days of the three weeks, in total, that plaintiff was held in the RCTP, he was on "suicide watch," and subject to almost continual monitoring. Plaintiff alleges that, at all times while confined in the RCTP, he was subjected to cruel and unusual punishment under the Eighth Amendment because his observation cell was constantly illuminated with bright overhead lights that were never dimmed, which caused difficulty sleeping and exposed him to the psychological problems related to sleep deprivation. (Second Am. Compl. at 7-8, Dkt. No. 67). Plaintiff demands substantial compensatory and punitive damages, but no injunctive relief.[2]

The Second Amended Complaint named only Auburn Superintendent Harold Graham as a defendant on plaintiff's conditions-of-confinement claim; but, plaintiff now seeks to join two additional defendants[3]– Maureen Bosco, the Executive Director of the Central New York Psychiatric Center ("CNYPC"), which is a facility operated by the New York Office of Mental Health ("OMH"), and Christopher Mayer, the Chief of the satellite unit of CNYPC in which plaintiff was confined, at various times,

---

[2] Plaintiff has since been transferred from Auburn to another facility, so any claims for injunctive relief would now be moot. *Booker v. Maly*, 9:12-CV-246 (NAM/ATB), 2014 WL 1289579, at *19 n.28 (N.D.N.Y. Mar. 31, 2014) (because plaintiff completed his sentence in the Special Housing Unit ("SHU"), he could no longer seek injunctive relief with respect to the conditions of his confinement in the SHU).

[3] In his pending motion to amend, plaintiff also sought to join, as a defendant, Anthony Annucci, the DOCCS Commissioner; however, plaintiff has subsequently withdrawn his motion to join Commissioner Annucci (Pl.'s Responsive Mem. of Law at 13, 14, Dkt. No. 83-1). Commissioner Annucci's name is misspelled in some of the motion papers, but I use the correct spelling herein.

at Auburn. (Dkt. No. 71). The proposed third amended complaint also alleges that plaintiff was confined in the RCTP, and again subjected to unconstitutional continual, bright illumination at various times after April 2012.

Defendant Graham argues that plaintiff's Eighth Amendment claim fails, as a matter of law. Supt. Graham argues further that he should be dismissed from this action because he was not personally involved with respect to plaintiff's conditions of confinement in the RCTP, and because he should, in any event, be protected from a damages claim by qualified immunity. Defendant Graham also argues that plaintiff's motion to amend should be denied as futile because the conditions-of-confinement claim against the proposed additional defendants would be subject to dismissal for the same reasons supporting Supt. Graham's cross-motion for summary judgment.

For the reasons set forth below, this court recommends that defendant Graham's motion for summary judgement with respect to the Second Amended Complaint be granted. No reasonable fact finder could conclude that Supt. Graham was personally involved in the lighting conditions in the RCTP for inmates not on suicide watch in March and April 2012, before he denied plaintiff's grievance appeal about conditions in the RCTP during that time period. There is at least an issue of fact as to whether defendant Graham was personally involved in the lighting conditions for inmates in the RCTP who were on suicide watch because he was aware of a policy or practice at Auburn that the overhead lighting would never be dimmed for inmates on suicide watch. However, Supt. Graham would be entitled to qualified immunity with respect to the period when plaintiff was confined in the RCTP on "suicide watch."

The court recommends that plaintiff's motion for summary judgment be denied. However, the court further orders that plaintiff may file his proposed third amended complaint, but only against defendant Graham and proposed defendant Christopher Mayer. Supplemental allegations in the proposed third amended complaint state a plausible claim that defendant Graham was personally involved in subjecting plaintiff to continual, bright overhead lighting in the RCTP after he denied plaintiff's grievance appeal in June 2012. Further, there are issues of fact with respect to whether Supt. Graham would be entitled to qualified immunity with respect to this claim. The claim in the proposed third amended complaint against Mr. Mayer would not be futile, based on the current record. When liberally construed and supplemented by an allegation made in connection with plaintiff's summary judgment motion, plaintiff states a plausible claim that Christopher Mayer was personally involved in the lighting conditions in the Auburn RCTP during times when plaintiff was confined there. However, the claim against proposed defendant Maureen Bosco would be futile, based on her apparent lack of personal involvement.

## OVERVIEW OF RELEVANT FACTS[4]

On March 16, 2012, plaintiff experienced a "mental breakdown," and was moved from Auburn's Special Housing Unit ("SHU") to an RCTP observation cell, where he also was placed on a one-on-one suicide watch. (Compl., Facts, ¶ 27, Dkt. No. 1 at 19-20; Graham Decl. ¶¶ 24, 25, Dkt. No. 72-10). Plaintiff commenced a

---

[4] In the Discussion section below, the court will discuss further details and nuances of the relevant facts as necessary to address the legal issues raised by the pending motions.

hunger strike while in the RCTP, and was moved, on March 18, 2012 to the infirmary at Auburn, where he remained on suicide watch. (Compl., Facts, ¶¶ 28, 29; Pl.'s Dep. at 21-22, 50, Dkt. No. 72-7). On March 28th, plaintiff ended his hunger strike and was taken off suicide watch. On March 29th, he was discharged from the infirmary and returned to an RCTP observation cell. (Def.'s Stmt. of Mat. Fact ¶ 33, Dkt. No. 72-4; Pl.'s Resp. to Def.'s Stmt. of Mat. Fact, Dkt. No. 83-3 at 6[5] (admitting ¶ 33)). Plaintiff remained in the RCTP, under observation, but not on suicide watch, until he was returned to the Auburn SHU on April 17, 2012. (Def.'s Stmt. of Mat. Fact ¶ 36; Pl.'s Resp., Dkt. No. 83-3 at 7 (admitting ¶ 36)). Thereafter, plaintiff was occasionally confined in an observation cell in the RCTP at Auburn, including between December 22 and 24, 2012 and between January 27 and February 6, 2013. (Pl.'s Responsive Mem. of Law at 6, Dkt. No. 83-1 at 8; Pl.'s Ex. B, Dkt. No. 83-4 at 4).

According to Supt. Graham, an inmate at Auburn is transferred to an observation cell in the RCTP when the inmate becomes "psychiatrically unstable, unpredictable or dangerous." (Graham Decl. ¶ 4 & Ex. A, Dkt. No. 72-11).[6] Defendant's motion response provides a detailed physical description of the RCTP observation cells at Auburn, which plaintiff does not contest in any substantial

---

[5] Where plaintiff's submissions do not have consecutive page or paragraph numbers, the court will refer to the page numbers assigned by the court's CM-ECF electronic docketing system, following the docket number ("Dkt. No.") of the document.

[6] While plaintiff admitted this statement, he notes that Auburn inmates are allowed to go to RCTP for a "time out" without being psychiatrically unstable, unpredictable, or dangerous. (Pl.'s Resp. to Def.'s Stmt. of Mat. Fact ¶ 3). The CNYPC policy cited by Supt. Graham does acknowledge that, under limited circumstances, an inmate may be placed in the RCTP for respite care or for security reasons. (Graham Decl., Ex. A at 1).

respect, and photographs of such a cell are included in the record. (Def.'s Stmt. of Mat. Fact ¶¶ 6-12, 15-17; Pl.'s Resp., Dkt. No. 83-3 at 3-4; photographs of RCTP cell, Dkt. No. 72-12). While OMH/CNYPC is responsible for providing mental health care to inmates confined in the RCTP at Auburn, DOCCS personnel at the facility remain responsible for security within the RCTP. (Def.'s Stmt. of Mat. Fact ¶ 5; Pl.'s Resp., Dkt. No. 83-3 at 2 (admitting ¶ 5, with caveat)).

Each RCTP observation cell is equipped with a single overhead lighting fixture that houses two 32-watt light bulbs and a separate, nine-watt LED night light. The lights in the RCTP observation cells are controlled by the prison security staff from a switch panel located at the officer's station at the end of the main hallway. (Def.'s Stmt. of Mat. Fact ¶¶ 19-20; Pl.'s Resp., Dkt. No. 83-3 at 4 (stating plaintiff lacks knowledge to admit or deny ¶¶ 19-20)). Supt. Graham alleges that, "as a general rule," the overhead daytime lights are turned on each morning at approximately 7:00 a.m., and are kept on through the evening count–conducted at approximately 10:30 p.m.–at which time, the daytime lights are turned off and only the 9-watt night lights remain on overnight. (Graham Decl. ¶ 12). While the illumination cast by the nine-watt night lights is "unobtrusive, it is sufficient to allow the DOCCS and OMH staff to see into the cells at all times," so they can monitor and observe the inmates in the RCTP cells. (Graham Decl. ¶ 13).

According to Supt. Graham, Auburn's Suicide Watch Policy requires that an inmate be placed on a "one-on-one" suicide watch when it appears that the inmate poses a threat to himself. (Graham Decl. ¶ 16). "An inmate on a one-on-one suicide

6

watch requires a 'level of observation that requires complete uninterrupted continuity.'" (Graham Decl. ¶ 17 (citing Ex. C, Dkt. No. 72-13)).[7] The correction officers conducting the suicide watch "are required to regularly record the behavior and condition of the inmate in a special suicide watch log book at 15 minute intervals, and whenever there is any significant change in the inmate's demeanor, behavior or condition (i.e., mood change, eating pattern, etc.)." (*Id*.). "When an RCTP inmate is on a one-on-one suicide watch, their [sic] daytime cell lights are kept on around the clock . . . to facilitate the 'direct, continuous visual observation' of the suicidal inmate by the corrections staff assigned to conduct the suicide watch." (Graham Decl. ¶ 18).

Plaintiff alleges that the bright overhead lights in his cell remained on at all times when he was confined in an observation cell in the RCTP in Auburn. (Second Am. Compl. at 7, ¶ 2). Plaintiff consistently denies that the cell lights were ever dimmed at night, whether or not an inmate was on suicide watch at the time. (*Id*.; Pl.'s Resp. to Def.'s Stmt. of Mat. Fact, Dkt. No. 83-3 at 5 (denying ¶ 29) & at 7 (denying ¶ 37)).[8] The second and proposed third amended complaints allege that the continuous bright lighting in his RCTP cell "caus[ed] difficulty sleeping" and note that sleep deprivation is known to cause "psychophysiologic problems." (Second Am. Compl. at

---

[7] The CNYPC "Suicide Watches" policy submitted by defendant Graham appears to be a different document that the one referenced in his declaration. While the CNYPC policy references "constant supervision" of an inmate believed to be at risk of suicide, it does not include the language quoted in the declaration. The policy states that one correction officer may monitor no more than two inmate-patients on suicide watch. (Ex. C, Dkt. No. 72-13 at 1).

[8] Plaintiff also submitted a declaration of another DOCCS inmate, Carlos Abreu, who stated that, at all times while he was confined in an observation unit in the mental health unit at Auburn in 2013, the cell lights were never dimmed at night. (Dkt. No. 68).

8, Sec. 6, ¶ 1; Proposed Third Am. Compl. at 9, Sec. 6, ¶ 1, Dkt. No. 71-2 at 9). In other motion papers, plaintiff claimed that he "suffered physical and mental pain of tension headaches, muscle tension, and gastric problems from sleep deprivation." (Pl.'s Mem. of Law in Support of Summary Judgment at 2, Dkt. No. 63-3 at 3).

After his release from the RCTP in April 2012, plaintiff filed a number of grievances, complaining that the continuous, bright lighting in the RCTP interfered with his sleep and caused other harm. (*See, e.g.,* Pl.'s Summary Judgment Motion, Ex. B, Dkt. No. 63-4 at 4 (4/2012 Amended Grievance claiming that plaintiff is "now suffering from migraine headaches" and had to "suffer the torture of sleep deprivation" in the RCTP); Ex. F, Dkt. No. 63-4 at 12-13; Ex. I, Dkt. No. 63-4 at 19-20; Ex. K, Dkt. No. 63-4 at 24-25). On June 29, 2012, Supt. Graham apparently signed a decision affirming the denial of plaintiff's April 2012 grievance. (Pl.'s Ex. D, Dkt. No. 63-4 at 8). Plaintiff alleges that, thereafter, he was occasionally confined in the RCTP, including in late 2012 and early 2013, and that he had difficulty sleeping because his observation cell was still continuously illuminated by the bright overhead lights during those periods. (Proposed Third Am. Compl. at 9, Sec. 6, ¶ 1).

## DISCUSSION

**I.     Summary Judgment Motions**

> **A.     Applicable Law**

>> **1.     Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

"The district court considering a summary judgment motion . . . must . . . be 'mindful of the underlying standards and burdens of proof . . .'" *U.S. S.E.C. v. Meltzer*, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006) (citations omitted). Where plaintiffs are moving for summary judgment, they bear a much greater initial burden;

9

they "must show that the evidence supporting [their] claims is so compelling that no reasonable jury could return a verdict for the defendant." *Id. Accord, McCarthy v. Wachovia Bank, N.A.*, 759 F. Supp. 2d 265, 273 (E.D.N.Y. 2011).

## 2. Conditions of Confinement

The Eighth Amendment protects prisoners from "cruel and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The constitutional prohibition against cruel and unusual punishment includes the right to be free from conditions of confinement that impose an excessive risk to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). To establish an Eighth Amendment claim based on unsafe or medically inappropriate living conditions, a plaintiff must establish that (1) he was incarcerated under conditions which posed a substantial risk of serious harm, and (2) prison officials acted with deliberate indifference to his health or safety. *See Farmer*, 511 U.S. at 834.

"The deliberate indifference standard embodies both an objective and a subjective prong." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Under the objective standard, a plaintiff must allege a deprivation "sufficiently serious" to constitute a constitutional violation. *Hathaway*, 37 F.3d at 66 (quoting *Wilson v. Seiter*, 501 U.S. at 298). "Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim." *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 199) (citing

*Hudson v. McMillan*, 503 U.S. 1, 9 (1992) (only those deprivations denying "the minimal civilized measures of life's necessities" are sufficiently serious to form the basis of an Eighth Amendment violation) (internal quotations and citations omitted).

The subjective element of the Eighth Amendment analysis focuses on whether the defendant official acted with "a sufficiently culpable state of mind." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citing *Wilson v. Seiter*, 501 U.S. at 300). "Deliberate indifference" requires more than negligence, but less than conduct undertaken for the very purpose of causing harm. *Farmer*, 511 U.S. at 835. In order for a prison official to act with deliberate indifference, he must know of and disregard an excessive risk to an inmate's health or safety. *Hathaway*, 37 F.3d at 66. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id*.

### 3. Personal Involvement

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability for any constitutional claim. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability. A supervisory official is personally involved if that official directly participated in the infraction. *Id*. The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to

remedy the wrong. Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id*. Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id*. *See also Iqbal v. Hasty*, 490 F.3d at 152-53 (stating that defendant could be liable under section 1983 if he failed to remedy a constitutional violation after learning of it, or was grossly negligent in managing subordinates who caused the violation); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

### 4. Qualified Immunity

Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In evaluating whether a right was clearly established at the time a civil rights defendant acted, the court must determine: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and, (3) whether under pre-existing law a reasonable defendant official would have understood that his or her acts were unlawful." *African Trade & Information Center, Inc., v. Abromaitis*, 294 F.3d 355, 360 (2d Cir. 2002) (citations omitted). Even if the constitutional privileges are clearly established, a government actor may still be shielded by qualified immunity "if it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v.*

*Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991).

### B.   Disputed Issues of Fact

#### 1.   Alleged Use of Night Lights in the RCTP

Defense counsel argues that the court should accept that plaintiff was subjected only to dimmed lighting from a 9-watt LED bulb during night hours for all the time that he was confined in the RCTP, except for the three days between March 15 and 18, 2012, when plaintiff was on one-on-one suicide watch. (Def.'s Mem. of Law at 2, 4, 10-11, 16-17, Dkt. No. 72-2). Defense counsel acknowledges that affidavits supporting a motion for summary judgment must be based on personal knowledge. (Def.'s Mem. of Law at 7). However, the only support for the claim that the lights in the RCTP were dimmed at night was the declaration of Supt. Graham that use of night lights was the "general rule" with respect to RCTP inmates not on suicide watch. (Def.'s Mem. of Law at 4; Graham Decl. ¶ 12). Moreover, defendant Graham also acknowledges that the DOCCS staff in the RCTP controlled the lighting and denies that he was personally involved in determining the extent of the illumination in plaintiff's cell when he was confined in the RCTP. (Graham Decl. ¶¶ 11, 22). The defense offers no declaration from anyone who directly controlled the lighting in plaintiff's cell to counter plaintiff's allegations that the lights were never dimmed at night during the various times when he was confined in the RCTP.

In response to various grievances, in which plaintiff makes clear that he is asserting that the bright lights in the RCTP were never dimmed, Supt. Graham and other DOCCS officials state only that the lights were kept on for security reasons; they

do not explicitly dispute plaintiff's claim that the night lights in the RCTP were not used. (Pl.'s Motion for Summary Judgment, Exs. B-F, H, I, K, Dkt. No. 63-4 at 4, 6, 8, 10, 12-13, 17, 19-20, 24-25).[9] Defense counsel offers no response to plaintiff's allegation, set forth in a grievance appeal attached to the declaration in support of his summary judgment motion, that Christopher Mayer, the Chief of the "Forensic Unit" at Auburn told plaintiff "that the lights stay on full blast per his orders." (Dkt. No. 63-4 at 25). Nor does the defense address the declaration from another inmate who confirms that the lights in the RCTP observation cells were still not being dimmed at night in 2013, after plaintiff had filed numerous grievances about the lighting. (Dkt. No. 68). Clearly, there is a disputed issue of fact as to whether the lights in the Auburn RCTP observation cells were dimmed at night, which cannot be resolved in connection with either plaintiff's or defendant's summary judgment motion.

### 2. Plaintiff's Claims of Sleep Deprivation and other Harms

Defense counsel argues that plaintiff's claims, that the bright lighting in the RCTP interfered with his sleep and caused him other harm, "should not be credited." (Def.'s Mem. of Law at 12). The defendant submitted observation logs from the brief period when plaintiff was on suicide watch in the RCTP in March 2012, and when he was apparently able to sleep. (Dkt. No. 72-15 at 2, 4). The defense also notes that plaintiff did not respond to the defendant's contention that plaintiff could have pulled one of the mats he was provided in the RCTP over his eyes if the light bothered him at

---

[9] It should be noted that the DOCCS responses to plaintiff's grievances also do not expressly admit that the night lights in the Auburn RCTP cells were not used at night.

14

night. (*Id.*; Def.'s Reply Mem. of Law at 2-3; Def.'s Stmt. of Mat. Fact ¶ 42; Pl.'s Resp., Dkt. No. 83-3).[10]

The suicide watch logs relating to plaintiff, submitted by the defense, indicate that plaintiff was observed apparently sleeping while in the Auburn RCTP much of the night of March 16-17, 2012 and several hours during the day on March 17th. (Dkt. No. 72-15 at 2, 4). The logs for the night of March 17-18 were apparently not submitted and, by the night of March 18-19, plaintiff had been moved to the infirmary. (Plaintiff has not claimed that the lighting or other conditions of confinement in the infirmary violated his Eighth Amendment rights, so his sleep patterns there are not relevant.) In one of his grievances, plaintiff claimed that the constant bright lighting in the RCTP became "torture **after a few days** [when] you would start to suffer sleepless nights, headaches, and delusions . . . . ." (Dkt. No. 63-4 at 20 (emphasis added). Neither party in this case has submitted plaintiff's medical records to help establish the extent to which plaintiff complained of, or was treated for, symptoms related to alleged sleep deprivation. The incomplete suicide watch logs indicating that plaintiff apparently slept during much of the first night he was in the RCTP are not sufficient to overcome

---

[10] Defense counsel also attacks plaintiff's claims regarding sleep deprivation in the RCTP by noting his deposition testimony that his ability to sleep in the SHUs at the Green Haven facility and Auburn (not the RCTP) had been hampered by some sort of machine that DOCCS must have placed behind his cell, which emitted an annoying radiation or current. (Def.'s Mem. of Law at 12 n.13; Pl.'s Dep. at 8-14). Defense counsel also notes plaintiff's admissions in his deposition that he lied about unrelated matters–accusing a facility doctor of sexual abuse and claiming that he ate his own feces in an attempt to kill himself. (Def.'s Mem. of Law at 6 n.4; Pl.'s Dep. at 41-47). Plaintiff's seemingly paranoid and perhaps delusional statements about DOCCS' efforts to interfere with his sleep in settings other than the Auburn RCTP, and other extrinsic evidence relating to his credibility, may become important at a trial in this matter, but should not be dispositive in the context of a summary judgment motion.

plaintiff's allegation about the effect of several weeks of confinement in an observation cell, at least in the context of a summary judgment motion.

Defendant's statement of material facts alleged that inmates in the RCTP are provided with two tear-resistant mats or blankets, and that, if an inmate found the overhead lighting in the observation cell intrusive, he could pull one of the mats over his head to shield his eyes. (Def.'s Stmt. of Mat. Fact ¶¶ 40-42). Plaintiff's response to defendant's statement of material facts did not include any response to paragraphs 39 through 44, all of which were set forth on the penultimate page of defendant's submission, page 6. (Def.'s Stmt. of Mat. Fact at 6; Pl.'s Resp., Dkt. No. 83-3). On May 12, 2014, plaintiff wrote the court noting that he had not obtained a complete copy of defendant's statement of material fact, which was apparently missing page 6. (Dkt. No. 77). Defense counsel thereafter represented to the court that he re-sent a complete copy of the Statement of Material Facts. (Dkt. No. 78). The last page of plaintiff's response to defendant's Statement of Material Facts indicated, in somewhat cryptic fashion, that he could not "put location of certain admissions or denials because Defendant[] did not provide information." (Dkt. No. 83-3 at 7). Given this uncertain history and the fact that plaintiff appears pro se, the court is loathe to deem plaintiff's failure to respond to the defendant's statements, including those relating to use of mats as eye shields, as binding admissions of fact. Elsewhere, plaintiff acknowledges having the mats in his cell (Pl.'s Dep. at 24); but he clearly claimed that the lights in the RCTP impeded his sleep. Defense counsel chose not to question plaintiff at his deposition regarding whether he had or could have used the mats to

16

shield his eyes from the lighting in the observation cell.  The court concludes there

remains a disputed issue of material fact with respect to the extent to which the RCTP

lighting interfered with plaintiff's sleep, notwithstanding the existence of possible

strategies to overcome the effects of the lighting.

### C.    RCTP Lighting When Plaintiff Was Not On Suicide Watch

#### 1.    Applicable Law

"[S]leep is critical to human existence, and conditions that prevent sleep have

been held to violate the Eighth Amendment." *Walker v. Schult*, 717 F.3d 119, 126 (2d

Cir. 2013) (citing, *inter alia, Tafari v. McCarthy*, 714 F. Supp. 2d 317, 367 (N.D.N.Y.

2010)) ("Courts have previously recognized that sleep constitutes a basic human need

and conditions that prevent sleep violate an inmate's constitutional rights.").

"Requiring inmates to live in constant illumination can . . ., under certain

circumstances, rise to the level of an Eighth Amendment violation." *Jones v. Rock*,

No. 9:12-CV-447 (NAM/TWD), 2013 WL 4804500, *10 (N.D.N.Y. Sept. 6, 2013)

(citing, *inter alia, Keenan v. Hall*, 83 F.3d 1083, 1090-91 (9th Cir. 1996) (an

allegation that large fluorescent lights directly in front of and behind an inmate's cell

that shown into his cell twenty-four hours a day, causing him grave sleeping problems

and other mental and psychological problems stated a claim of cruel and unusual

punishment that could withstand a motion for summary judgment). *See also Holmes

v. Grant*, No. 03 Civ. 3426, 2006 WL 851753, at *3, 11-12 (S.D.N.Y. Mar. 31, 2006)

(denying motion to dismiss plaintiff's claim that 24-hour illumination of the SHU

during his 35 days of confinement caused fatigue, loss of appetite, migraine

headaches, and other physical and mental problems because, as alleged, it would sustain both the objective and the subjective prongs of an Eighth Amendment analysis) (collecting cases). The decisions evaluating Eighth Amendment claims based on continuous lighting in the prison setting are very "fact-driven," turning on the degree of illumination, the duration of the inmate's exposure, the extent of harm it causes, and the penological justification for the lighting. *Booker v. Maly*, 9:12-CV-246 (NAM/ATB), 2014 WL 1289579, at *18 (N.D.N.Y. Mar. 31, 2014) (citing, *inter alia*, *McGee v. Gold*, No. 1:04-CV-335, 2010 WL 5300805, at *5 (D. Vt. Aug. 3, 2010) (Rep't-Rec.), *adopted*, *sub nom. McGee v. Pallito*, 2010 WL 5389996 (D. Vt. Dec. 20, 2010), *vacated and remanded on other grounds sub nom. Kimber v. Tallon*, 556 F. App'x 27 (2d Cir. 2014); *Chappell v. Mandeville*, 706 F.3d 1052, 1058-59 (9th Cir. 2013) (comparing cases).[11]

---

[11] Another case from the Ninth Circuit has noted

The precise role of legitimate penological interests is not entirely clear in the context of an Eighth Amendment challenge to conditions of confinement. The Supreme Court has written that the test of *Turner v. Safley*, 482 U.S. 78 . . . (1987), which requires only a reasonable relationship to a legitimate penological interest to justify prison regulations, does not apply to Eighth Amendment claims. *Johnson v. California*, 543 U.S. 499, 511 . . . (2005) ("[W]e have not used *Turner* to evaluate Eighth Amendment claims of cruel and unusual punishment in prison. . . .) . . . The existence of a legitimate penological justification has, however, been used in considering whether adverse treatment is sufficiently gratuitous to constitute punishment for Eighth Amendment purposes. *See Rhodes v. Chapman*, 452 U.S. 337, 346 . . . (1981) ("Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'")

*Grenning v. Miller-Stout*, 739 F.3d 1235, 1240 (9th Cir. 2014) (some citations omitted). Other courts which have considered penological justification in the context of claims involving continuous prison lighting have related it to the subjective prong of the Eighth Amendment analysis. *See, e.g., Chavarria v. Stacks*, 102 F. App'x 433, 436 (5th Cir. 2004) (plaintiff cannot establish the subjective element of an Eighth Amendment violation because he cannot show that his deprivation is unnecessary and wanton, given the security-related justification for the lighting policy in the administrative segregation area).

## 2.    Analysis

Given the disputed issues of material fact in this case, plaintiff's claim relating to the lighting in the RCTP for inmates not on suicide watch cannot be resolved, as a matter of law, under Eighth Amendment standards, or based on qualified immunity, on summary judgment.  However, no reasonable juror could find that defendant Graham was personally involved with lighting conditions for inmates not on suicide watch before he denied plaintiff's grievance appeal in June 2012.  Accordingly, this court recommends that summary judgment be granted with respect to the Second Amended Complaint, which relates to lighting in the Auburn RCTP in March and April 2012.

The proposed third amended complaint would supplement plaintiff's Eighth Amendment claim against defendant Graham to include harm caused by continuous, bright lighting in the Auburn RCTP **after** June 2012.  The supplemental allegations support a plausible claim that Supt. Graham was personally involved in the lighting conditions in the RCTP for inmates not on suicide watch after June 2012 through early 2013.  Based on the authority set forth in section IIIA. below, the Eighth Amendment claim against defendant Graham in the proposed Third Amended Complaint would not be futile, as to the period after June 2012, and should be allowed to go forward.

### a.    The Merits of Plaintiff's Eighth Amendment Claim

As noted above, there is a disputed issue of fact in this case as to whether the Auburn inmates confined in the RCTP, but not on suicide watch, were subjected to continuous illumination from bright overhead lights, or whether only relatively dim nights lights were employed at night.  There are also unresolved issues of fact

19

regarding the extent to which plaintiff suffered sleep deprivation and other harm as the result of his confinement in the RCTP for 20 days in March and April after he was released from suicide watch.[12]  The penological justification offered by the defense is predicated on the clearly disputed assumption that the lights in the RCTP were dimmed at night, except for inmates on suicide watch.  (Def.'s Mem. of Law at 10-11).  Moreover, the declaration of defendant Graham appears to acknowledge that, at least for inmates not on suicide watch, the night lights, which plaintiff insists were never used, would have provided sufficient illumination for the correction staff at Auburn to monitor the inmates in the observation cells.  Given these disputed issues of material fact and the failure of the defendant to document a penological justification for the lighting practices that is consistent with the undisputed facts, plaintiff's Eighth Amendment claim for the period when he was confined in an observation cell, but was not on suicide watch, cannot be resolved, on the merits, on summary judgment.  *See, e.g.*, *Keenan v. Hall*, 83 F.3d at 1090-91; *Grenning v. Miller-Stout*, 739 F.3d 1235, 1238-41 (9th Cir. 2014) (overturning grant of summary judgment dismissing prisoner's claim that he was harmed by exposure to constant lighting for 13 days, because factual issues existed as to brightness of continuous lighting in prisoner's special management unit cell, the effect on prisoner of continuous lighting, and as to whether prison officials were deliberately indifferent);  *Shepherd v. Ault*, 982 F. Supp. 643, 647-49 (N.D. Iowa 1997) (summary judgment denied on inmates' claim that

---

[12] As discussed below, plaintiff's proposed third amended complaint also includes, in his Eighth Amendment claim, subsequent periods during which he was confined in the RCTP.

long-term confinement in disciplinary detention cells, which were continuously illuminated with 60-watt bulbs, interfered with their sleep, where there were factual issues regarding the security justification for the lighting policy).

### b.    Personal Involvement

Although defendant Graham stated that, as a "general rule," only the 9-watt night lights are used to illuminate the RCTP observation cells between approximately 10:30 p.m. and 7:00 a.m., for inmates not on suicide watch, he noted that the DOCCS staff in the RCTP controlled the lighting. (Graham Decl. ¶¶ 11, 12). Supt. Graham claimed that he "played no role" in turning the observation cell lights on and off, and thus denied any personal involvement with respect to the intensity of the illumination when plaintiff was confined in the RCTP in March and April 2012. (Graham Decl. ¶ 22; Def.'s Mem. of Law at 13).

Plaintiff asserts that Supt. Graham became personally responsible for the lighting in the RCTP because he denied an appeal of a grievance in which plaintiff clearly alleged that the overhead lighting in the RCTP was never dimmed when he was confined there in March and April 2012. (Pl.'s Mem. of Law in Support of Summary Judgment at 8 & Exs. B, D, Dkt. No. 63-4 at 4, 8).[13]  Defense counsel correctly notes that plaintiff's April 29, 2012 amended grievance was not submitted

---

[13] Defense counsel argues that "nowhere in plaintiff's summary judgment motion papers does Plaintiff contend that defendant Graham responded **personally** to Plaintiff's grievances." (Def.'s Mem. of Law at 14).  However, plaintiff's Ex. D appears to be a denial of plaintiff's grievance appeal signed by Supt. Graham, which rules that "[t]he lights stay on" notwithstanding the allegation, in plaintiff's amended grievance (Ex. B) that "[w]ith the light fully on 24 hours a day the night light was never used the entire time I was [in the RCTP observation cell]." (Dkt. No. 63-4 at 4, 8).

until after his initial stay in the RCTP was completed, and that Supt. Graham would not have been able to correct any prior problem with the lighting in the RCTP when he denied plaintiff's grievance appeal, on June 29, 2012. (Def.'s Mem. of Law at 14). Accordingly, this court concludes that no reasonable fact finder could conclude that defendant Graham was personally involved with respect to the lighting conditions in the RCTP for inmates not on suicide watch in March and April 2012, and recommends dismissal of the Second Amended Complaint.

However, in the proposed third amended complaint, and in his response to defendant's summary judgment motion, plaintiff alleges that he was confined in the RCTP at various times **after** Supt. Graham denied his grievance appeal. Plaintiff claims that he was again deprived of sleep because the bright overhead lights continued to illuminate the observation cells constantly, without being dimmed at night. (Proposed Third Am. Compl. at 9, Sec. 6, ¶ 1; Pl.'s Responsive Mem. of Law at 9-10). This court concludes that the proposed third amended complaint sets forth a plausible claim that, following his denial of plaintiff's grievance appeal, defendant Graham became personally involved with respect to the RCTP lighting conditions that are the basis for plaintiff's Eighth Amendment claim. While Supt. Graham is entitled to summary judgment with respect to plaintiff's claims in the Second Amended Complaint involving the continual lighting in the RCTP in March and April 2012, the proposed third amended complaint and plaintiff's responsive papers create an issue of fact as to whether defendant Graham was personally responsible for not remedying the lighting issues raised in plaintiff's grievance before plaintiff was subsequently

confined in the RCTP, allegedly under the same conditions.

In *McKenna v. Wright*, 386 F.3d 432, 437-38 (2d Cir. 2004), the Second Circuit noted that it was "questionable [as to] whether an adjudicator's rejection of a grievance would make him liable for the conduct" of which the inmate complained.[14] The district courts within this Circuit "are divided regarding whether review and denial of a grievance constitutes personal involvement in the underlying alleged unconstitutional act." *Burton v. Lynch*, 664 F. Supp. 2d 349, 360 (S.D.N.Y. 2009) (collecting cases). The *Burton* court noted that district courts have found personal involvement based on denying a grievance where (1) the official undertakes some kind of investigation into the initial denial; (2) the official provides a detailed and specific response to the grievance rather than a *pro forma* denial; or (3) the grievance involves an ongoing violation "such that the 'supervisory official who reviews the grievance can remedy it directly.'" *Id.* (*quoting Vega v. Artus*, 610 F. Supp. 2d 185, 198 (N.D.N.Y. 2009)). *See also Young v. Choinski*, __ F. Supp. 2d __, No. 3:10-CV-606, 2014 WL 962237, at *15 (D. Conn. Mar. 13, 2014) (if the supervisory official is confronted with an "ongoing" constitutional violation and reviews a grievance or appeal regarding that violation, that official is "personally involved" if he or she can remedy the violation directly).

In this case, defendant Graham personally denied plaintiff's grievance appeal

---

[14] The Second Circuit concluded, however, that "[w]hen allegations of improperly denied medical treatment come to the attention of a supervisor of a medical program, his adjudicating role concerning a grievance cannot insulate him from responsibility for allowing the continuation of allegedly unlawful policies within his supervisory responsibility." 386 F.3d at 438.

23

about the alleged, continuous bright lights in the RCTP in June 2012, albeit in a relative *pro forma* fashion. Supt. Graham professed to believe that the general rule in the RCTP was that the lights in the observation cells should be dimmed at night, except for inmates on suicide watch. And, the level of lighting was controlled by the facility security staff, over whom Supt. Graham presumably had ultimate authority. Accordingly, there is at least an issue of fact as to whether defendant Graham was in a position to remedy the alleged violation of the general lighting policy in the RCTP upon his receipt of plaintiff's complaint. Rather than doing so, Supt. Graham ruled that "the lights stay on"; and, on subsequent occasions when plaintiff was confined in the RCTP (with no indication that he was on suicide watch), he was allegedly deprived of sleep because the overhead lights were not dimmed at night. *Cf. Johnson v. Fischer*, No. 9:12-CV-210 (DNH/TWD), 2012 WL 5866130, at *4 (N.D.N.Y. Oct. 17, 2012) (denying motion to dismiss claim against Supt. Graham based on a lack of personal involvement, because plaintiff's allegations plausibly suggested that he filed grievances involving ongoing exposure to indoor smoke, bird feces, and mold that defendant Graham could have remedied directly) (Rep't- Rec.), *adopted*, 2012 WL 5866524 (N.D.N.Y. Nov. 19, 2012).

### c. Qualified Immunity

Defense counsel argues that "defendant Graham should be entitled to summary judgment because no clearly established right of the Plaintiff was violated . . . when he was subjected to illumination from a 9-watt night light when he remained in the RCTP but no longer was on a one-on-one suicide watch." (Def.'s Mem. of Law at 16-17).

Because this court has concluded that plaintiff should be allowed to proceed with the claim in the proposed third amended complaint against Supt. Graham, with respect to the lighting conditions in the RCTP when plaintiff was confined there after June 2012, I must address the qualified immunity issue.

There would be considerable support for defendant's claim of qualified immunity **if** only the nine-watt light had been used at night to illuminate the observations cells for inmates not on suicide watch. *See, e.g., Booker v. Maly*, 2014 WL 1289579, at *18-19 & n. 28 (defendant would be entitled to qualified immunity with respect to plaintiff's Eighth Amendment claims based on constant illumination in the SHU, where a separate three-watt LED night light was used between 11:00 p.m. and 6:00 a.m. so that the correction staff could adequately monitor inmates in special housing) (collecting cases). However, as noted above, there is a clear factual dispute as to whether the bright overhead lights were ever turned off at night in the Auburn RCTP, as well as a material issue of fact as to the extent to which the lighting in the observation cell affected plaintiff's sleep and health. As noted, the Second Circuit has confirmed that "conditions that prevent sleep have been held to violate the Eighth Amendment." *Walker v. Schult*, 717 F.3d at 126. Lower court cases in this circuit and cases from other circuits, cited above, have clearly held that continuing illumination that interferes with an inmate's sleep may, at least in the absence of substantial penological justification, violate the Eighth Amendment. Given the disputed issues of fact in this case, this court cannot determine, in the context of a summary judgment motion, "whether under pre-existing law a reasonable defendant official would have

understood that his or her acts were unlawful." *African Trade & Information Center, Inc., v. Abromaitis*, 294 F.3d at 360. The court also concludes that where a defendant, like Supt. Graham, offers a penological justification for prison lighting conditions that is not consistent with the undisputed facts, there is a material issue of fact as to whether it was "objectively reasonable" for the him to believe that the conditions of confinement did not violate the constitutional rights of the inmates affected. *Kaminsky v. Rosenblum*, 929 F.2d at 925.[15]

### D. RCTP Lighting When Plaintiff Was On Suicide Watch

Notwithstanding his contrary admission in his original complaint (Facts, ¶ 27, Dkt. No. 1 at 19-20), plaintiff apparently no longer concedes that he was placed on suicide watch when he was first sent to an RCTP observation cell on March 15, 2012. (Def.'s Stmt. of Mat. Fact ¶ 30; Pl.'s Resp., Dkt. No. 83-3 at 5 (denying that he was placed on one-on-one suicide watch)). The defendant has submitted the special watch

---

[15] Had the defendant offered a sound penological justification for continual, bright illumination for all inmates in the RCTP observation cells (including those not on suicide watch), he might have stated a viable case for summary judgment based on qualified immunity. Neither the Supreme Court, nor the Second Circuit have expressly decided whether continuous, full lighting, supported by adequate penological justification, would constitute an Eighth Amendment violation. Even the Ninth Circuit, which recognized, in *Keenan*, that continual, bright illumination in the prison setting may constitute cruel and unusual punishment, has held that it is "not clearly establish[ed] that constant illumination . . . done for a legitimate penological purpose" violates the Eighth Amendment. *Chappell v. Mandeville*, 706 F.3d at 1058-60 (granting summary judgment on qualified immunity grounds in favor of the defendants because the "fact-driven" decisional law would not have provided them with fair notice that their actions–subjecting plaintiff to seven full days of contraband watch under full lighting so that they could monitor him and prevent him from disposing of the contraband–violated the Eighth Amendment). However, as noted above, the defendant here essentially conceded that the night lights available in the RCTP permitted correction staff to monitor the inmates in the observation cells, which would, at least, create an issue of fact with respect to whether there was any penological justification for constant, bright lighting for RCTP inmates not on suicide watch.

logs corroborating that plaintiff was on suicide watch in RCTP observation cell number 3 from March 15th until he was moved to the infirmary (still on suicide watch) on March 18th. (Dkt. No. 72-15 at 1-5). Given plaintiff's inconsistent statements on this issue, the distinct possibility that he might not have realized his "suicide watch" status given his admittedly troubled mental state at the time, and the documentary proof submitted by defendant, the court concludes that no reasonable fact finder would conclude that plaintiff was not on suicide watch in the RCTP for three days, starting on March 15th.[16]

As discussed above, defendant Graham acknowledged the practice at Auburn that the lights in an RCTP observation cell were not dimmed at night for inmates on suicide watch, because such inmates were subjected to continual observation, directly or by live video monitoring. (Graham Decl. ¶¶ 9, 15-18, 20).[17] That admission creates

---

[16] *See, e.g.*, *Benitez v. Pecenco*, 92 Civ. 7670, 1995 WL 444352 at n.5, (S.D.N.Y. July 27, 1995) (conclusory claim that plaintiff was never issued medication was directly contradicted by medical records and was insufficient to create a factual dispute on that issue); *Brown v. White*, 9:08-CV-200 (GLS/ATB), 2010 WL 985184, at *8 (N.D.N.Y. Mar. 15, 2010) (plaintiff's conclusory suggestion that defendant nurse completely refused to provide any medical attention on a particular date is insufficient to create a dispute of fact in the face of the sworn declaration and supporting documentary evidence in the record.). *See also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' . . . and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.").

[17] Plaintiff denies that the RCTP cells were monitored by video and claims that the night lights provided enough light for a correction officer sitting in front of the observation cell of an inmate on suicide watch to monitor and protect the inmate. (Pl.'s Resp. to Def.'s Stmt. of Mat. Fact), Dkt. No. 83-3 at 3, 5 (¶¶ 13, 14, 29)). Plaintiff would not have necessarily been in a

at least an issue of fact as to whether Supt. Graham was personally involved in lighting conditions in the Auburn RCTP for inmates on suicide watch.

However, plaintiff was held in the RCTP on suicide watch for no more than three days and, as documented by the suicide watch logs, he managed to sleep at night during at least part of that period.  Given the substantial risk that an inmate placed on suicide watch would harm himself, Supt. Graham cited a compelling penological justification for maintaining full lighting around the clock under those circumstances.  When combined with the brief duration of plaintiff's confinement in the RCTP on suicide watch and the documentary evidence contradicting plaintiff's claim that he was deprived of sleep during this particular time period, this court recommends summary judgment in favor of defendant Graham with respect to plaintiff's Eighth Amendment claims for the time he was on suicide watch.

Even if there were disputed issues of fact with respect to the merits of plaintiff's conditions-of-confinement claim for the time he was on suicide watch, no reasonable fact finder would conclude that defendant Graham (or any other defendant plaintiff seeks to join) was not entitled to qualified immunity.  Under the case law in effect in

---

position to know that the RCTP cells were remotely monitored by video.  Given his claim that the night lights were never used while he was in the RCTP, his conclusory statement that they would provide sufficient illumination to properly monitor a suicidal inmate does not create an issue of material fact, particularly because suicidal inmates are monitored, in part, remotely by video.  Although patients in the RCTP generally have been determined to be "psychiatrically unstable, unpredictable or dangerous," DOCCS rules contemplate confinement there, under limited circumstances, for more benign reasons, including respite care.  See n. 6, above.  The plaintiff has not provided evidence creating an issue of fact with respect to the declaration of Supt. Graham that inmates on suicide watch require closer monitoring under brighter lighting conditions than other inmates in the RCTP.

2012, a reasonable prison official, relying on a substantial penological justification, would not have understood that confining a potentially suicidal plaintiff for a matter of a few days under full lighting around the clock would have violated his constitutional rights, particularly given plaintiff's apparent ability to sleep during this time period, despite the lighting. *See, e.g., See Scarver v. Litscher*, 434 F.3d 972, 977 (7th Cir. 2006) ("constant illumination of [mentally disturbed inmate's cell at "Supermax" facility] may have had a security rationale as well; it reduced the likelihood that [inmate] would use the cloak of darkness to attempt suicide or make a weapon of some sort."); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) (upholding Fed. R. Civ. P. 41(b) grant of involuntary dismissal of conditions-of-confinement claim following bench trial, based, in part, on the court's finding that continuous lighting in the holding cell was not unreasonable given the need for jail security and to monitor suicidal inmate). *See also Ferguson v. Cape Girardeau County,* 88 F.3d 647, 650 (8th Cir. 1996) (upholding grant of summary judgment against plaintiff's conditions-of-confinement claim, where plaintiff was observed sleeping during 93 hours of his 14 days of confinement in the vestibule cell despite continuous bright lighting, because the "totality of the circumstances–which include the relative short duration of the confinement, the necessity to keep the detainee under observation for both his medical condition as well as general safety concerns, and the amount of time that he spent out of the cell–supports the assertion of legitimate governmental interest"); *Chavarria v. Stacks*, 102 F. App'x 433, 436 (5th Cir. 2004) (constant illumination is reasonably related to the legitimate penological interest of

maintaining security for inmates confined in administrative segregation; a policy of dimming the lights at night and brightening them each time the guards passed by the cell would be even more disruptive to inmate sleep and thus was not an alternative that would fully accommodate the prisoner's right to sleep); *Chappell v. Mandeville*, 706 F.3d at 1059-60 (since, at the time plaintiff's contraband watch took place, no court had ruled on whether contraband watch constitutes a legitimate penological purpose that would justify continuous lighting, and plaintiff was subjected to continuous lighting for only seven days and did not claim that he was deprived of sleep or intentionally kept awake, defendants did not have fair notice that their actions were unconstitutional, and were entitled to qualified immunity).[18]

## II. Motion to Amend

This court has already explained why it concluded that the Eighth Amendment claim against defendant Graham in the proposed third amended complaint should be allowed to go forward, based on the legal standards set forth below. I will now consider whether plaintiff should be allowed to join Maureen Bosco and Christopher Mayer as new defendants on the conditions-of-confinement claim.

---

[18] Various cases, cited above in denying summary judgment on qualified immunity grounds for continual, bright illumination in the RCTP for inmates not on suicide watch, are distinguishable. *Keenan v. Hall*, 83 F.3d at 1088, 1090-91, and the case on which it relied– *LeMaire v. Maass*, 745 F. Supp. 623, 626, 636 (D. Or. 1990), *vacated on other grounds*, 12 F.3d 1444, 1458-59 (9th Cir. 1993)–both relied on a lack of penological justification for the continual lighting policies reviewed in those cases, and both involved relatively long-term confinement (of at least six months) under the challenged lighting conditions. *See Chappell v. Mandeville*, 706 F.3d at 1057-58 (distinguishing *Keenan* and *LeMaire*). *Shepherd v. Ault*, 982 F. Supp. at 648 involved two plaintiffs confined under continual lighting for between 283 and 550 days.

## A.     Applicable Law

Pursuant to Fed. R. Civ. P. 15(a), a court should grant leave to amend a pleading "freely . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The Second Circuit has stated that, "[a] *pro se* plaintiff who brings a civil rights action should be 'fairly freely' afforded an opportunity to amend his complaint, even if he makes the request after the court has entered judgment dismissing his original complaint."  *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984) (citing *Bradley v. Coughlin*, 671 F.2d 686, 690 (2d Cir. 1982)).  The Second Circuit has articulated the similarly liberal standards by which a court may allow a party to supplement a pleading with allegations regarding transactions, occurrences, or events that have transpired since the date of the original pleading:

> Fed. R. Civ. P. 15(d) permits a party to move to serve a supplemental pleading and the district court may grant such a motion, in the exercise of its discretion, upon reasonable notice and upon such terms as may be just. . . . [L]eave to file a supplemental pleading should be freely permitted when the supplemental facts connect it to the original pleading.

*Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995) (citations omitted).

Although Rule 15 generally governs the amendment or supplementation of complaints, where the proposed amendment seeks to add new parties, Fed. R. Civ. P. 21 governs.  *Rush v. Artuz*, No. 00 Civ. 3436, 2001 WL 1313465, at *5 (S.D.N.Y. Oct. 26, 2001).  Rule 21 states that "the court may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.  "In deciding whether to allow joinder, the Court is guided by 'the same standard of liberality afforded to motions to amend pleadings under Rule

15.'" *Rush v. Artuz*, 2001 WL 1313465, at *5 (citations omitted). *Accord, Javier H. v. Garcia-Botello*, 239 F.R.D. 342, 346 (W.D.N.Y. 2006).

A motion to amend, supplement, or join parties should not be denied unless there has been undue delay, bad faith, undue prejudice to the opposing party, or the amendment is futile. *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001). A motion to amend may also be denied when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed. *Berman v. Parco*, 986 F. Supp. 195, 217 (S.D.N.Y. 1997). This is particularly true when the movant offers no excuse for the delay.

Generally, an amendment is futile if the pleading fails to state a claim or would otherwise be subject to dismissal. *U.M.G. Recordings, Inc. v. Lindor*, CV-05-1095, 2006 WL 3335048, at*2 (E.D.N.Y. Nov. 9, 2006) (citing *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 42 (2d Cir. 1979)). "'In addressing the proposed futility of an amendment, the proper inquiry is comparable to that required upon a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).'" *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.,* 404 F.3d 566, 604 (2d Cir. 2005) (citation omitted). The court must accept the asserted facts as true and construe them in the light most favorable to the amending party. *Stetz v. Reeher Enterprises, Inc.*, 70 F. Supp. 2d 119, 121 (N.D.N.Y. 1999). When proposed amendments raise colorable claims, especially where they are based upon disputed facts, they should be allowed, and a comprehensive legal analysis deferred to subsequent motions to dismiss or for summary judgment. *See, e.g., Alexander Interactive, Inc. v. Adorama, Inc.*, 12 Civ.

6608, 2014 WL 113728, at *4 (S.D.N.Y. Jan. 13, 2014); *Gallagher v. Town of Fairfield*, 3:10CV1270, 2012 WL 370070, at *3 (D. Conn. Feb. 2, 2012); *S.S. Silberblatt*, 608 F.2d at 42-43; *WIXT Television, Inc. v. Meredith Corp.*, 506 F. Supp. 1003, 1010 (N.D.N.Y. 1980). In the limited circumstances when a summary judgment motion is opposed with a cross-motion to amend a pleading, the futility of the proposed amendment is judged by whether it would survive a motion for summary judgment. *Milanese v. Rust-Oleum Corp.*, 244 F.3d at 110.

## B.    Analysis

As noted, plaintiff now seeks to join Maureen Bosco, the Executive Director of CNYPC, and Christopher Mayer, the Chief of the satellite unit of CNYPC at Auburn, as defendants in his proposed third amended complaint. He also seeks to supplement his complaint with allegations of subsequent confinement in the RCTP, after April 2012, through early 2013, under the same continual, bright lighting conditions.[19]

Defense counsel alleges that plaintiff could have named the new putative defendants earlier, but waited until the eve of the dispositive motion deadline to move to join them, without any good faith reason. (Def.'s Mem. of Law at 18). At a February 21, 2014 telephone conference, plaintiff advised the court and opposing counsel that he was waiting to move to join Ms. Bosco and Mr. Mayer until he exhausted his administrative remedies with respect to his claims against those CNYPC

---

[19] Plaintiff alleges that he was confined in the RCTP on "7/17/12, 8/22/12, 8/28/12, 12/18/12, 12/22/12, 12/24/12, 1/16/13, 1/27/13, and 2/4/13," and provides documentation of confinement in the RCTP between December 22 and 24, 2012 and between January 27 and February 6, 2013. (Pl.'s Responsive Mem. of Law at 6; Pl.'s Ex. B, Dkt. No. 83-4 at 4).

officials relating to the lighting in the RCTP at Auburn, which would not occur until plaintiff's grievance appeal was decided by CNYPC. The court granted plaintiff leave to file his motion to amend, subject to anticipated opposition from the defense. (Dkt. No. 66). Ms. Bosco denied plaintiff's grievance appeal by letter dated March 18, 2014, and plaintiff filed his motion to amend on April 9th, less than one month later. (Pl.'s Responsive Mem. of Law at 12-13 & Ex. A, Dkt. No. 83-4 at 2). Given these circumstances, the court cannot conclude that the timing of plaintiff's motion to file his third amended complaint was untimely or made in bad faith.

Defense counsel also argues that plaintiff's motion to amend should be denied as futile because "the newly named defendants would be entitled to summary judgment for the same reasons set forth above by Defendant Graham." (Def.'s Mem. of Law at 18). Defense counsel did not, however, support this position with any sworn statements from defendant Graham addressing the critical supplemental allegations in the proposed third amended complaint,[20] or with any declarations from the new prospective defendants. Hence, the court must rely primarily on plaintiff's allegations in the proposed third amended complaint in addressing whether his amended claims are futile, based on the standards of Fed. R. Civ. P. 12(b)(6).

For the reasons set forth above with respect to defendant Graham, the court concludes that plaintiff's claims against Ms. Bosco and Mr. Mayer would be futile, at

---

[20] As discussed above, plaintiff's supplemental allegations that he was again confined in the RCTP under the same lighting conditions **after** Supt. Graham denied his grievance appeal and ruled that "the lights stay on," are sufficient to establish that plaintiff's claims against defendant Graham are not futile based on defendant Graham's alleged lack of personal involvement.

least on the issue of qualified immunity, insofar as they relate to plaintiff's confinement on suicide watch between March 15 and 18, 2012. The proposed claims against Maureen Bosco, with respect to plaintiff's subsequent confinement in the RCTP, would be futile based on a lack of personal involvement. On the current record, plaintiff's claims would not be futile as to Christopher Mayer with respect to plaintiff's subsequent, occasional confinement in the RCTP, from March 2012 through early 2013, under alleged continuous, bright illumination.

### 1.    Maureen Bosco

In his proposed third amended complaint, plaintiff alleges that he submitted a grievance about the lighting in the RCTP to CNYPC on April 15, 2013. (Proposed Third Am. Compl. at 8, ¶ 6; Pl.'s Summary Judgment Motion, Ex. I, Dkt. No. 63-4 at 19-20). Plaintiff received a response from Debra Mennig of CNYPC on April 23, 2013 advising that complaints regarding the physical conditions at the RCTP at Auburn "fall[] outside of the purview of the Office of Mental Health and would need to be addressed with the appropriate DOCCS staff." (Third Am. Compl. at 8, ¶ 6; Pl.'s Summary Judgment Motion, Ex. J, Dkt. No. 63-4 at 22). In denying plaintiff's appeal with respect to this grievance, Maureen Bosco, on March 18, 2014, stated "[t]he determination remains that light in the [RCTP] observation cells is controlled by DOCCS staff. OMH has no jurisdiction over environmental conditions in the correctional setting." (Pl.'s Responsive Mem. of Law, Ex. A, Dkt. No. 83-4 at 2).

Maureen Bosco did not become personally involved with respect to the lighting conditions at the RCTP at Auburn merely because one of her subordinates responded

to a letter of complaint from plaintiff. *See, e.g., Smart v. Goord*, 441 F. Supp. 2d 631, 642-643 (S.D.N.Y. 2006) (the failure of a supervisory official to respond to a letter of complaint is insufficient to create personal responsibility); *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (a supervisor's referral of a prisoner's letter of complaint to a subordinate for review, and a later response to the prisoner to advise him of the subordinate's decision did not demonstrate the requisite personal involvement on the part of the supervisory prison official). It is clear from the letters of Ms. Bosco and Ms. Mennig of CNYPC, as well as the declaration of Auburn Supt. Graham (¶¶ 4, 11), that the DOCCS staff at Auburn, not CNYPC officials in Marcy, New York, are responsible for the conditions of confinement in the RCTP at Auburn, including the lighting. Plaintiff offers no evidence to contradict that fact. Accordingly, Ms. Bosco's denial of plaintiff's grievance appeal would not make her personally involved based on the authority cited in section IC2b., above, because she was not in a position to address the issue about which plaintiff complained. In any event, by the time Ms. Bosco responded to plaintiff's grievance appeal, he was no longer at Auburn. (Pl.'s Responsive Mem. of Law at 6, Dkt. No. 83-1 at 8; Pl.'s Ex. B, Dkt. No. 83-4 at 4). Thus, Ms. Bosco could not have remedied plaintiff's complaint about the lighting in the RCTP even if she had the authority to do so.

### 2. Christopher Mayer

Plaintiff alleges that, on February 14, 2013, he directed a grievance about the lighting in the RCTP to Christopher Mayer, the chief of the CNYPC satellite unit at Auburn; but Mr. Mayer never responded. (Third Am. Compl. at 10, ¶ 4; Pl.'s

36

Summary Judgment Motion, Ex. F, Dkt. No. 63-4 at 12-13). In her April 23, 2013 response to plaintiff's subsequent grievance to CNYPC, Debra Mennig advised plaintiff that she contacted the mental health unit chief at Auburn, presumably Mr. Mayer, about plaintiff's concerns. (Pl.'s Summary Judgment Motion, Ex. J, Dkt. No. 63-4 at 22). In plaintiff's appeal of the denial of his grievance to CNYPC, plaintiff stated that, before he wrote the grievance to Mr. Mayer on February 14, 2013, plaintiff spoke with Mr. Mayer who advised "that the lights [in the RCTP] stay on full blast per his order." (Pl.'s Summary Judgment Motion, Ex. K, Dkt. No. 63-4 at 24-25).

Plaintiff's allegations in the proposed third amended complaint, alone, would not be sufficient to state a plausible claim that Christopher Mayer was personally involved in the lighting conditions in the RCTP while plaintiff was confined there. Based on the authority cited above, Christopher Mayer's failure to respond to plaintiff's February 14, 2014 grievance would not make him personally involved with the lighting in the RCTP. Moreover, plaintiff's grievances were not sent to Mr. Mayer and CNYPC until after February 6, 2014–the latest date plaintiff alleged that he was in the Auburn RCTP–so the recipients of those grievances would not have been able to remedy the previous conditions of confinement about which plaintiff complained. *See* note 19, above.

However, given plaintiff's claim, in a grievance appeal, that Christopher Mayer, the CNYPC satellite unit chief at Auburn, ordered that the overhead lights in the observation cells stay on "full blast" continuously, this court cannot say that plaintiff's proposed Eighth Amendment claim against Mr. Mayer would be futile because of a

lack of personal involvement.[21]  Thus, the court will provide plaintiff with an

opportunity to further supplement his proposed third amended complaint to include or

incorporate the allegations set forth in his motion papers that Christopher Mayer told

plaintiff that he ordered the continuous, bright lighting in the RCTP.  With that change

to the third amended complaint, the court would allow plaintiff to join Mr. Mayer as a

defendant, without prejudice to this new defendant filing a substantive motion seeking

dismissal of plaintiff's claim based on additional factual submissions.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant Graham's cross-motion for summary

judgment (Dkt. No.72) be **GRANTED**, and that the Second Amended Complaint be

**DISMISSED**, and it is

**RECOMMENDED**, that plaintiff's motion for summary judgment (Dkt. No.

63) be **DENIED**, and it is

**ORDERED** that plaintiff's motion for leave to file a third amended complaint,

(Dkt. No. 71), is **GRANTED IN PART**, with respect to defendant Graham and

Christopher Mayer, but is **DENIED** with respect to Anthony Annucci and Maureen

Bosco.  Plaintiff is granted leave to further supplement his current proposed third

amended complaint by including or incorporating allegations from his motion papers

regarding an alleged admission of Christopher Mayer regarding his involvement with

---

[21] It is unclear, from plaintiff's grievance appeal, at what point in time Christopher Mayer allegedly ordered the continuous, bright lighting in the RCTP to stay on.  (Pl.'s Ex. K, Dkt. No. 63-4 at 25).  However, the defense did not submit any declaration or other evidence rebutting plaintiff's claims regarding Christopher Mayer's purported admission.

the lighting conditions in the Auburn RCTP.  Plaintiff shall file a revised, proposed

third amended complaint by August 19, 2014 for this court's review.  Any deadlines

for approved filing of the revised third amended complaint, and for defendants

Graham and Mayer to respond to such complaint are stayed pending the review of the

recommendations set forth herein by U.S. District Judge Hurd.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen (14) days within which to file written objections to the foregoing report.

Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT

TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE

APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


**Dated:  August 5, 2014**

Hon. Andrew T. Baxter
U.S.  Magistrate Judge